Price, J.
In the year 1900 the Village of Carthage became ambitious for better streets, and necessary action was taken by its council to create a fund for their improvement; and this was done by the issue and sale of bonds in the total sum of $40,000, which, with the premium received thereon, aggregated, $40,480. The sum was placed in the treasury on or about the 7th day of June, 1900, and the same was in the treasury on August 10, 1900, and when the contract involved in this litigation was entered into. The city had no other fund for such improvements. Prior to August 10, 1900, the village took the necessary steps and passed the necessary proceedings to improve certain eighteen streets of the village, that number being a large majority of its streets. Linden avenue, made prominent in this record, is one of them. Up to this time there had been no allotment of any particular sum to any one of such streets, but the gross fund stood committed, so far as necessary, to the improvement of all of them. But by finding 7 Linden avenue came first in the examination and acceptance of bids for its improvement, for it is said that the legislative proceedings of the council for the eighteen streets took place at the same time. The proceedings as to each street were kept separate from the proceedings relating to each of the others. Separate resolutions were adopted and separate ordinances as to each were passed.
Another important fact has been found, -that the village engineer, as one of the preliminary steps in the proceedings, under the instructions of the council and guided b)r plans and specifica *337 tions adopted for that purpose, made an approximate estimate of the quantities of materials to be used on Linden avenue, and we presume the same is true of- each of the others. . These estimates for Linden avenue are in finding 4 returned by the jury. There were plans and specifications with approximate- estimate, and while it may be true that at that time there was no statute requiring a preliminary or approximate estimate, one was on file and subject to the inspection of all bidders, just as were the plans and specifications.
Oh the approximate estimate of quantities of material to be used, the bid of Diekmeier was made at the figures contained in the 7th finding, and his bid being the lowest, the same was accepted, and the mayor was instructed to execute a contract on behalf of the village. This instruction was in the form of a resolution adopted August 10, 1900. There was then due, under the law, a certificate of the village clerk under Section 2702 (old number), Revised Statutes. If not due and essential when the resolution was adopted, it certainly was requisite to a valid contract with the bidder that the section be complied with when the contract was executed on the 13th or 14th of August of that year. The section referred to then provided: “No contract, agreement or other obligation involving the expenditure of- money shall be' entered into, nor shall any ordinance resolution or order for' the appropriation or expenditure of money be passed by the council, or by any board or officer of a municipal corporation, unless the auditor of the corporation, and if there is no auditor, the clerk thereof, shall .first certify *338 that the money required for the contract, agreement or other obligation, or to pay the appropriation or expenditure, is in the treasury to the credit of the fund from which it is to be drawn, and not appropriated for any other purpose, which certification shall be filed and immediately recorded; and the sum so certified shall not thereafter be considered unappropriated until the corporation is discharged from the contract, agreement or obligation, or so long as the ordinance, resolution, or order is in force; and all contracts, agreements or other obligations, and all ordinances, resolutions and orders entered into or passed, contrary to the provisions of this section shall be void.”
The contractor claims that such a certificate was on file and recorded before his contract was litered into, and the jury state its character in the 7th finding as follows: “I hereby certify that there is money in the village treasury in the fund from which the above fund is proposed to be drawn for payment of the village portion of the improvement, and not appropriated for any other purpose, sufficient to pay for the same. L. Hall, Village Clerk.” The jury finds (No. 8) that at the conclusion of the reading of the resolution and certificates an objection was made by the village solicitor because the certificate contained no specified amount set apart for the improvement of Linden avenue, and thereupon the engineer gave the amounts to the clerk, and gave him $2,030 as the amount for Linden avenue, and the clerk placed that amount on the certificate in figures, and after that was done the resolution to accept Diekmeier’s bid was passed.
*339 The use of the word “certificates” in the finding just referred to, and the statement that the engineer gave the clerk the amount as $2,030 for Linden avenue, indicates that there was on hand a certificate for each of the eighteen streets in similar form and substance, and that the engineer was ready to supply the amount allotted to Linden avenue without delay. Thus corrected the certificate was left on file, and doubtless recorded.
It is not expressly found by the jury that Diekmeier was present, either in person or by a representative, nor is it found that he was not present and had no knowledge of the proceedings. It was not only his privilege but his duty to be present when matters of such prime importance were under consideration by the council. He was vitally interested in what might be done with his bid and it was incumbent upon him to see that he was not entering upon a contract barren of legitimate fruits. He was required at his peril to see that a legal certificate was on file.
It is said by his counsel, that placing the figures $2,030 on the face of the certificate in the lower left-hand corner could have no more force or effect than if endorsed on the back thereof. We can not subscribe to the statement and thus belittle the effect of the action of the clerk. The dollar mark followed -by the figures 2,030 Indicates so much money, and it would so indicate to the minds of ordinary men. The placing of them on the certificate was a public transaction, when their absence was noted and criticised. They were on the face of the instrument and in that condition filed and recorded. A computation at *340 the price bid on the material -shown in the approximate estimate of the engineer, plus cost of advertising and fees of engineer, makes the precise sum of $2,030. All this was done two or three days prior to the formal signing of the contract. It was a paper and a record of which the bidder must take notice, and .the presence of the added figures — added publicly in the meeting of council — could -convey no other information than that they expressed a limit on the fund allotted for Linden avenue.
But how will the case stand if we discard those figures and deal with the original certificate? Diekmeier knew that the fund — $40,480—raised by the sale of bonds, was the sole fund for the improvement of eighteen streets. Lie was a bidder and afterwards a contractor for the improvement of several of them Had he any reason to believe that under the certificate as first drawn, he had the entire sum of $40,480 appropriated to his contract for Linden avenue ? What would become of the appropriation of money for the other contracts?
It is contended that the certificate without the figures is according to the language of the statute, and therefore .sufficient; that the statute does not require a definite sum to be certified as being in the treasury, but that it is- a compliance to certify that there is enough in the treasury unappropriated to other' purposes, to meet the obligation or contract. If there was but a single contract or expenditure in contemplation, the claim might be tenable in such an instance, but this we do not decide. But in the present case it appears there *341 were eighteen resolutions, including the one here involved, adopted at the same council meeting. The bids accepted were separate for the different streets, and separate contracts were executed for such streets. The estimated quantity óf material at the price bid for Linden avenue amounted to $2,030. The claim in suit was more than double that amount. If that should be a standard for the other contracts as the outcome of their performance, the cost of improving the eighteen streets would at least be double the $40,480. The brief of defendant in error admits that the excess charges on all the streets is $16,000 to $18,000.
But we are dealing with the meaning of the section requiring the certificate. After the words of prohibition and the duty of filing and recording the certificate, and their effect, it provided: "and the sum so certiñed shall not thereafter be considered unappropriated until •the corporation is discharged from the contract, agreement or obligation, or so long as the ordinance, resolution or order is in force; and all contracts, agreements or other obligations, and all ordinances, resolutions and orders entered into or passed, contrary to the provisions of this section shall be void.”
Whatever may be the correct view as to the meaning of this statute where a single contract is let, it seems to be a reasonable construction that there be a definite sum certified for each contract where there are several of the same species entered into at the same time to be paid from a theretofore gross fund. It would seem conducive, if not necessary to the safety of each contractor, that a definite sum be certified, because it is on the per *342 lormance of that act by the village clerk that money to discharge the obligation is set apart and appropriated, and which “shall not thereafter be considered unappropriated,” etc. The two branches of the section must be construed together and when so construed, the entire section given its proper operation. Governed by this rule, we can not say that the original certificate in question was drawn in compliance with said statute, and while in case of a single contract in contemplation, to be satisfied from a single fund, such a certificate might be sufficient, (but we do not so decide), it is quite clear to us that when the statute is to be applied to the subject-matter where several different streets are to be improved for which purpose separate contracts are let on different separate bids, the certificate should contain a specified sum set apart for each' of such contracts. Such must have been the construction entertained in the Linden avenue contract; or rather the resolution authorizing the contract, for the jury found (No. 8) that when the resolution had been read, the solicitor made the objection that the certificate of the clerk contained no specified amount for the improvement of Linden avenue, whereupon the engineer gave the clerk the amount to be inserted for that avenue, and it was placed on the face of the certificate in figures, and after that the resolution was adopted. These acts of the engineer and clerk can not be safely discarded by the contractor, for in doing so, he must rely on a document which was not drawn in compliance with law, and his whole claim would be illegal and void. Under the facts of this case *343 as to the nature and number of contracts awarded at the same time, the original, certificate did not conform to the statute, and the contractor would be without remedy. But with the figures added to the face of the instrument, $2,030 was the sum certified and to that extent the village set apart from the gross fund the amount to cover the Linden avenue improvement. We are told this amount has been paid before suit was brought, and the suit is to recover over $2,260 in excess of that amount.
It is urged for the contractor, that he did not bid a gross sum for improving Linden avenue, but bid for material according to quantity and for certain labor at so much per yard or foot, and so on, and therefore with only the approximate estimate for a basis, it would not be known in advance what should be certified, as the final estimate might exceed the first in a material degree. In addition to this claim it is argued, that the mayor and council visited the work as it progressed, and that some or all of them became aware that the quantities of material being used were far in excess of the approximate estimate, and that the engineer fully understood this.
Again, it is said in the brief that finding 10 in the special verdict shows that “in said specifications the right was reserved to the said Village of Carthage to increase or diminish or omit entirely any of the work therein set forth, but any such action on the part of the village should not vitiate or annul the said specifications or any contract that might be made in accordance with the same, but on the contrary such contract *344 should remain in full force and effect, subject only to the proviso that the value and amount of all of such omissions should be deducted from the amount which would otherwise be due, and that the value and amount of all other modifications, alterations and substitutions should be either deducted from or added to the amount which would otherwise be due, and that any increase in the amount of work should entitle the said Henry Diekmeier to a reasonable extension of the time for the completion of the work.”
In connection with this, we call upon finding 19, which reads: “The council of the-village never took any action increasing the quantities of the work to be done or the material furnished on the improvement of Linden avenue over the amount contained in the approximate estimate, included in the plans and specifications hereinbefore set forth, and no sum or sums of money in addition to the $2,030 was ever appropriated by the council or certified by the clerk of the village for the payment of any part of the- cost of the improvement of Linden avenue, which was to be paid for by the village.” This finding shows that so far as the council is concerned, it never took part in any of the acts which, under finding 10, would increase the amount to which the contractor would otherwise be entitled. And it is an answer to the comment, that while individual members of the council and the engineer, may have had knowledge that greater quantities of material were being used, and therefore more work required than contemplated in the approximate estimate, and while individually, they may have encouraged such ex *345 penditure, the council took no action and incurred no liability and did nothing officially to bind the corporation.
If the bidder knew that the approximate estimate made in advance of the contract was not required by law, he knew also that one could be made in order to furnish a guide in making bids; and if it was suspected as being too low in quantities according to the plans and specifications, he was not required to follow it and bid, but insist on a correct estimate -being made.
Moreover, it was not within the power of the council or the village engineer to increase the liability of the corporation beyond the amount for which the certificate had been filed and thereby nullify Section 2702. That would be striking down rather than obeying the statute. No mere final estimate of the engineer, no matter if it is correct in its terms, can increase the corporate liability, neither did the acceptance of the work by the public authorities accomplish that • result. If the contractor found he was deceived by the estimate as to quantities and work, and that the improvement could not be made on such terms, he should have acted promptly and had legal and proper action taken to relieve the dilemma rather than proceed blindly or willingly, expecting that the law and action of council would be relaxed so he could get full compensation by putting another and unexpected burden upon the taxpayers.
No longer can it be said that the contractor need not look to the legal phases of his negotiations with a municipal corporation. He must- be *346 active in protecting himself. This doctrine was announced in McCloud & Geigle v. City of Columbus, 54 Ohio St., 439; and clearly stated in Lancaster v. Miller, 58 Ohio St., 558. It is there held, not only that the terms of a statute regulating the execution of a contract whereby public money will be expended, must be followed, but where the statutory requirements have been omitted, the corporation will not by the acts of its officers be estopped to set up such omissions as a defense to an action brought against it on such contract. The strictness of the rule is justified in the opinion of the court on page 575. Among other things, it is there said: “Contracts made in violation of these statutes should be held to impose no corporate liability. Persons who deal with municipal bodies for their own profit' should be required at their peril to take notice of limitations upon the powers of those bodies which these statutes impose.”' The next paragraph of the opinion is also in point here, but space is not ours for its present quotation.
.The same principle pervades Buchanan Bridge Co. v. Campbell et al., 60 Ohio St., 406; also Comstock v. Nelsonville et al., 61 Ohio St., 288. The third section of the syllabus in that case is: “Whether the certificate required by said Section 2702 has been filed and recorded or not, must be ascertained by each contractor for himself at his peril. In the absence of such certificate, when required, no liability arises against the municipality, even though the contractor has fully performed his contract.”
This court has adhered to the doctrine so often announced, in City of Wellston v. Morgan, 65 *347 Ohio St., 219. If there was anything left in doubt or obscure in the former cases, it surely has been made plain and emphasized in the latter case. There are other decisions, but these are sufficient to establish the law of this jurisdiction.. It seems to us that the present is a proper case for the application of the doctrine of the above cases. To hold otherwise would put it in the power of a contractor to exhaust the people’s money on a few streets, and . leave the others wholly unimproved.
We presume the village refused to pay in excess of the $2,030 certified, and having paid that amount, the plaintiff in error is entitled to judgment on the special verdict. We reverse the judgments of the lower courts and render judgment in favor of plaintiff in error.

Judgment reversed.

Crew, C. J., Summers, Spear, Davis and Shauck, JJ., concur.